# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CLINT FLAKES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE NO. |
| v. ) | 1:22-cv-00210-VMC |
| ) | |
| LOWE'S HOME CENTERS, LLC (NC) ) | |
| and JOHN DOES 1-5, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERTS MICHAEL A. HODGE AND MARK SAFARIK

COMES NOW, Clint Flakes, Plaintiff in the above-styled case (hereinafter "Plaintiff"), and pursuant to *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Federal Rule of Evidence 702, and Local Rule 26.2 for the Northern District of Georgia, hereby files this Motion to Exclude Defendant's Experts Michael A. Hodge and Mark Safarik, showing the Court as follows:

## STATEMENT OF FACTS

This case arises out of an incident in which Plaintiff was shot in the parking lot of a store owned and operated by Defendant Lowe's Home Centers, LLC (NC) (hereinafter "Defendant") in East Point, Georgia. (Doc. 1-2). Plaintiff filed his

Complaint in Gwinnett County State Court and the case was subsequently removed to this Court based on diversity jurisdiction. (Doc. 1).

On August 18, 2023, Defendant "disclosed"[1] two (2) experts, Michael A. Hodge and Mark Safarik, to provide opinions in line with Defendant's defenses. Specifically, Mr. Hodge was retained to provide opinions on security and crime prevention, and Mr. Safarik was retained to provide opinions on crime scene analysis.

Mr. Hodge was deposed on October 27, 2023. During his deposition, he provided the basis for his opinions, including how he examined Defendant's "history." According to Mr. Hodge, he bases his opinion that Defendant's security measures were reasonable because it was consistent with the premises' history. In order for Mr. Hodge to determine the premises' history, he reviewed the incident reports provided to him by Defendant.

> Q. So what do you do when you go to do one of these to look for the risk factors. And you said you have to examine the history. So what do you do to examine the history?
> …
> A. Yes. You look at the information that's available to the property, and that is what does the property have knowledge of. Do they have … such as Lowe's, they … they provide a report when they're made aware of a concern.

---

[1] Plaintiff filed a Motion to Strike outlining the various deficiencies in Defendant's purported expert disclosure.

      Q. Sure, a major incident report.
      A. Major incident report.

(Hodge 33:12-25). In fact, Mr. Hodge testified that the "best level of understanding is what happens on the property, such as what Lowe's did with their major incident reports." (Hodge 69:3-12). However, Mr. Hodge's reliance on the major incident reports – what he calls the "best level of understanding" of what happens on the premises – is that Defendant's employees readily admitted that completing incident reports is "discretionary" and is not always done. (Chauncey Brown 113:10-23; 121:24-122:18; Lucas John Moeller 94:13-99:5; Jay Davila 68:14-20). As such, Mr. Hodge's reliance on Defendant's major incident reports to assess the risk of the premises is flawed from the start as most employees, unfortunately, will not go the extra mile and complete a report, when it is discretionary especially when the consequences would require the Defendant to have a heightened duty.

    As for Mr. Safarik, his deposition took place on October 26, 2023. During his deposition, Mr. Safarik testified several times that Plaintiff confronted his attackers – a "fact" that is controverted by videos, photographs, and deposition testimony. Mr. Safarik based many of his opinions on this assertion, which renders those opinions inadmissible under *Daubert*.

    Likewise, Mr. Safarik provided opinions which were outside his area of expertise. For example, Mr. Safarik provided opinions about the trajectory of the

bullet that struck Plaintiff, suggesting that Plaintiff's testimony does not match the ballistic evidence at the scene. However, Mr. Safarik is not a ballistics expert and is not qualified to provide such opinions. The true goal of Mr. Safarik's opinion is obvious – to place the blame on Plaintiff such that he is unable to recover in this case. As discussed below, this is an improper use of expert testimony and warrants striking those portions of testimony.

For these reasons and the reasons discussed herein, Plaintiff respectfully requests that this Court exclude Defendant's experts Michael A. Hodge and Mark Safarik.

## ARGUMENT AND CITATION OF AUTHORITY

### A. Legal Standard.

Federal Rule of Evidence 702, which governs the admissibility of expert opinion testimony, provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. When determining whether to admit expert testimony, "[t]rial courts must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The burden of laying the foundation for the admissibility of the expert's opinion is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence. *Daubert*, 509 U.S. at 592. The proponent of the expert testimony has the burden of showing that the expert "is qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact is resolving a disputed issue of material fact." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004); *see McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005) (recognizing that "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion" (*citing Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)).

**B. <u>Michael A. Hodge.</u>**

### 1. **<u>Mr. Hodge's Methodology is Unreliable.</u>**

Mr. Hodge testified during his deposition that the crime "history" of Defendant's property was based **entirely** on major incident reports kept by Defendant. However, Defendant's own employee testified that not every incident is reported and the reporting process is "discretionary." Thus, in determining whether Defendant's security measures were reasonable, Mr. Hodge relied on insufficient and unreliable data and information, which renders his opinions unreliable.

When assessing the liability of an expert's opinions, the court must analyze each step in the logic leading up to the expert's conclusions. *McClain*, 401 F.3d at 1245. If the analysis is deemed unreliable at any step, the expert's entire opinion must be excluded. *Id*. Factors to be considered in determining reliability include (1) the nature of the field of claimed expertise, (2) the source of the expert's knowledge, (3) the expert's level of care in using the knowledge, and (4) the expert's consideration of alternative hypothesis. *See* Fed. R. Evid. 702 advisory committee's note (2000). Regardless of the facts used to determine reliability, the expert's testimony must **always** be based on "good grounds." *Daubert*, 509 U.S. at 590. "Leaps of faith" unsupported by good grounds preclude the admission of expert testimony. *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002).

Here, Mr. Hodge's testimony can hardly be said to be based on "good grounds," or even "mediocre grounds." Instead, Mr. Hodge's opinion that Defendant had adequate security measures compared to its history of crime is based on incomplete data.

Mr. Hodge testified multiple times that the **best** information for determining the level of crime at a particular location is the property's incident reports.

> Q. And isn't the information that they put in the UCR, isn't it based on how they input it in the hierarchy system so that some crimes don't make it into that database at all?
>
> A. I'm aware that the UCR might have some challenges, but that's exactly why I testified earlier that the best level of information or understanding is what happens on the property, such as what Lowe's did through their major incident reports.

(Hodge 69: 3-12)

> Q. Did you know that the UCR doesn't account for the number of victims, so that if somebody goes in the bank and they shoot 20 people, it's just one shooting that's reported?
>
> A. No. As I testified, my reliance is on the UCR is because the security field relies upon it, it's just a source of information. But, again, as I testified the best level of information is that which property owners know about, such as through their major incident reports.

(Hodge 71:13-22).

Mr. Hodge repeatedly testified that "the best source of information" for Defendant's history of crime on its premises are the incident reports filled out by

Defendant's employees. Yet, Defendant's employees have testified that not every incident makes it into a report. Not only are incidents, i.e., crimes, not always reported, but the incident reports are discretionary in that the employees determine what does and does not go into the report. ( I would put testimony here of what the employees said).

Thus,  Mr. Hodge's "best evidence" is basing the entirety of his opinions on incomplete incident reports that do not give the full picture of the crime that has occurred on Defendant's property. If Mr. Hodge does not know the full crime history, how can he give an opinion on what security measures were reasonable?

Essentially, Defendant is asking this Court to accept expert opinions which are nothing more than pure speculation. Mr. Hodge could not say one way or another whether every incident was reported, or that he received a full accounting of every major incident which had occurred on the premises. If Mr. Hodge cannot provide the history of the crime on Defendant's property, he cannot opine that Defendant's security was up to standard. That would require this Court to make a "leap of faith" – a large one at that – to allow Mr. Hodge's opinions in the face of insufficient data.

### 2. Mr. Hodge's testimony is not helpful to the jury

Moreover, Expert testimony is admissible only if it assists the trier of fact, which means the testimony must "concern[] matters that are beyond the

understanding of the average lay person. *U.S. v. Frazier*, 387 F.3d 1244,1261-62 (11thCir. 2004). Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262-63. Expert testimony must fit the facts of the case – expert testimony does not fit where "a large analytical leap must be made between the facts and the opinion." *Bowers v. Norfolk Southern Corp.,* 537 F. Supp. 2d 1351 (citing *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir.2004) and *GE v. Joiner*, 522 U.S. 136, 147 (1997)). Mr. Hodge does not have an expert-level understanding of how the UCR is established or the basis of the crime statistics listed therein. He merely read an article and looked at numbers of crimes that can be explained to and understood by lay persons, and argued by the attorneys in closing arguments. See *Frazier*, 387 F.3d at 1262-63. His testimony will not assist the trier of fact in understanding the questions at issue in this case and he certainly cannot opine about causation. This Court should, therefore, exercise its gatekeeping function and exclude his proffered expert testimony.

### C. Mark Safarik.

#### 1. Mr. Safarik's Opinions are not Relevant to the Facts.

As for Mr. Safarik, his expert opinions are not based on the facts of the case. Therefore, his opinions do not hold up to a *Daubert* inquiry and he should be

excluded from this case. Furthermore, many of his opinions are simply conclusions that do not require expertise.

The critical concerns of Rule 702 are evidentiary reliability and relevancy, which are addressed by the two-step inquiry set forth in *Daubert*. *Daubert*, 509 U.S. at 579. First, the trial court must determine whether an expert's opinions pertain to scientific knowledge by applying the criteria suggested in *Daubert*. *Id*. At 589-590. This requires the trial court to disregard "subjective belief or unsupported speculation." *Id*. at 590. Next, the trial court must consider whether the testimony assists the trier of fact in understanding the evidence or determine a fact in issue, which is essentially a relevance inquiry. *Id*. at 591-593. The relevancy relationship between a scientific theory and the facts of the case was described by the Supreme Court as one of "fit." *Id*. at 591. Thus, the expert's opinion must "fit" the facts of the case. *Id*.

Here, all of Mr. Safarik's opinions are predicated on the misplaced assertion that Plaintiff engaged with the individuals who shot him.

> Q. Judging by your report, it is your opinion that Flakes engaged with the individuals in the Nissan Maxima at the time when Mr. Robinson was shot, true?
>
> A. Yes.

(Safarik 79:1-5).

## 2. Mr. Safarik is Unqualified to Give Ballistic Opinions.

In his report and during his deposition, Mr. Safarik opined that Plaintiff had to be facing the assailants at the time of the shooting because he was shot in the right cheek. However, Mr. Safarik does not have the knowledge, skill, training, or expertise to provide that opinion, which is essentially an opinion on ballistics.

> A. So for Flakes to be shot, **especially in the right cheek**, because I think that becomes an important part of the assessment, he would have to exit the truck, and then face Wolfe. Face the vehicle, face Wolfe.

(Safarik 97:2-6) (emphasis added).

Mr. Safarik doubled down and testified that an alternative theory was impossible.

> Q. Sure. He could be heading in the opposite direction, but looking at Wolfe and get shot in the right cheek.
>
> A. **I don't believe that would be possible.**
>
> Q. Okay. Why not?
>
> A. Because when he exits the vehicle, the door is open. And so the door presents a barrier between him and the Maxima and Mr. Wolfe. So there's the door and then there's the glass. Neither of those have any kind of bullet injury to them. So if he is turning, as he said in his deposition, to flee, then he turns – his right cheek is now facing north between the door and the opening. And if he's running then, towards the Lowe's, his cheek is never – his right cheek is never available to be shot by Wolfe.

(Safarik 97:22-98:14) (emphasis added). His testimony leaves the realm of "crime scene analysis" – which he admitted his expertise is confined to – and jumps into

ballistics and the path of the bullet which struck Plaintiff's face. Mr. Safarik is not experienced in ballistics and does not hold himself out as an expert in ballistics, a highly-specialized field. *See Rojas Mamani v. Sánchez Berzaín*, 2018 WL 2980371, at *3 (S.D. Fl. 2018) (recognizing that opinions on ballistics and bullet trajectories requires specialized training on shooting scene reconstruction). Mr. Safarik's testimony only serves to bolster the defense that Plaintiff confronted the assailants who shot him because if the factfinder finds that Plaintiff confronted his attackers, he is precluded from recovery. However, Mr. Safarik admits that despite the entire scene being on video, the video never shows Mr. Flakes confronting the assailants.

> Q: You said that Flakes engaged with the two men in the Maxima. Would you agree that the video never shows Mr. Flakes engaging with the two criminals.
>
> A: Correct. It does not show that.
>
> Q: In fact, the video shows Mr. Flakes running away from the people in the Maxima, correct?
> A: Yes.

(Safarik 80:8-15). Despite the video evidence, Mr. Safarik claims that part of his testimony will be based on the video evidence. (Safarik 11:19-22).

### 3. **Mr. Safarik comes to conclusions that contradict witness testimony**.

Mr. Safarik, as shown above, claims that Mr. Flakes confronted the assailants. However, this contradicts all witness depositions. Mr. Flakes repeatedly testified that

he asked to get out of the vehicle and a witness, Mr. Clerkley, who was recently deposed, testified that Mr. Flakes was being dropped off at Lowes and when Mr. Robinson headed towards the assailants, Mr. Flakes immediately asked to be let out of the vehicle.[2]

This is not the first time Mr. Safarik has used his "expert" opinions simply to solidify his client's theory in a case. In *People v. King*, 2020 IL 123926 (2020), Mr. Safarik's opinions were excluded because he testified outside his expertise as a crime scene analyst. As the Court in *King* stated, "we wish to stress that we will not condone the calling of experts solely for the purpose of shoring up one party's theory of the case, **which is precisely the role that Safarik played here**." *Id*. at 32. Mr. Safarik's aim by slyly adding ballistics testimony and opinions that contradict video evidence seeks to support Defendant's Motion for Summary Judgment and contributory negligence by suggesting Plaintiff went looking for a fight. But as the Court in *King* held, and as should be held here, Mr. Safarik should be prohibited from giving opinions on how and from which direction Plaintiff was shot.

### 4. Mr. Safarik's opinions are not founded through specialized expertise and are simply closing arguments.

---

[2] Mr. Clerkley's deposition transcript is not yet transcribed, but Plaintiff will file with the Court when he receives it.

Mr. Flakes had a knife on his person at the time of being shot. He kept the knife in his backpack. However, because the backpack was zipped up, Mr. Safarik comes to the conclusion that Mr. Flakes must have pulled the knife out prior to the altercation. While this could be a simple argument the lawyers could make during their closing, Mr. Safarik does not stop there. He then claims that because Mr. Flakes had a knife on him at the time of the shooting, this is further evidence that Mr. Flakes was confronting the assailants. His reasoning? *It doesn't make sense that someone would then zip the backpack up (after getting the knife)*. (Safarik 234:13-14). This testimony, to assist the trier of fact, is not based upon the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). This is a simple argument that the Defendant can make in closing arguments and one that the trier of fact can conclude once the evidence is heard. This is certainly not an area that requires any expertise and any testimony based upon the backpack being zipped up should be prohibited as it is not scientifically based.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court exclude Defendant's experts Michael A. Hodge and Mark Safarik, and prohibit their testimony and opinions in any motion, proceeding, or at trial.

Respectfully submitted this 27th day of November, 2023.

**WERNER LAW, LLC**

|  |  |
|---|---|
| 2860 Piedmont Road | **/s/ Nola D. Jackson** |
| Atlanta, GA 30305 | MICHAEL L. WERNER |
| 404-793-1690 | Georgia Bar No. 748321 |
| mike@wernerlaw.com | NOLA D. JACKSON |
| nola@wernerlaw.com | Georgia Bar No. 387799 |
| dan@wernerlaw.com | DANIELL R. FINK |
| casey@wernerlaw.com | Georgia Bar No. 540374 |
|  | CASEY J. BROWN |
|  | Georgia Bar No. 757384 |
|  | **Attorneys for Plaintiff** |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1(C)

I hereby certify pursuant to Rule 5.1 of the Local Rules for the Northern District of Georgia that this document has been prepared in "Times New Roman" font, 14-point, as required by Local Rule 5.1(C).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the within and foregoing **PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERTS MICHAEL A. HODGE AND MARK SAFARIK** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

| | |
|---|---|
| Cody M. McCollum | Jennifer M. Busby |
| Vernis & Bowling of Atlanta, LLC | Burr & Forman, LLP |
| 30 Perimeter Park Drive, Suite 200 | 420 20th Street, Suite 3400 |
| Atlanta, GA 30341 | Birmingham, AL 35203 |

Bret A. Beldt
Burr & Forman, LLP
171 17th Street, NW, Suite 1100
Atlanta, GA 30363

This 27th day of November, 2023.

**WERNER LAW, LLC**

**/s/ Nola D. Jackson**

| | |
|---|---|
| 2860 Piedmont Road | MICHAEL L. WERNER |
| Atlanta, GA 30305 | Georgia Bar No. 748321 |
| 404-793-1690 | NOLA D. JACKSON |
| mike@wernerlaw.com | Georgia Bar No. 387799 |
| nola@wernerlaw.com | DANIELL R. FINK |
| dan@wernerlaw.com | Georgia Bar No. 540374 |
| casey@wernerlaw.com | CASEY J. BROWN |
| | Georgia Bar No. 757384 |
| | **Attorneys for Plaintiff** |